## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-00855-KAS

ESTATE OF CARL MARTIN, et al.,

      Plaintiffs,

v.

ADAMS COUNTY, COLORADO, et al.,

      Defendants.

---

## PLAINTIFF'S MOTION TO CONDUCT
## LIMITED JURISDICTIONAL DISCOVERY

Plaintiffs, through undersigned counsel, respectfully submit this Motion to Conduct Limited Jurisdictional Discovery. Although Plaintiffs are currently entitled to fulsome discovery under Rule 26 and the Local Rules of the District of Colorado, Defendant H.I.G. Capital, LLC ("HIG") has filed a motion to stay discovery as to HIG asserting that it is beyond the jurisdiction of this Court. Plaintiffs request jurisdictional discovery to properly respond to HIG's claims that it is not subject to this Court's jurisdiction.

### Conferral Certificate Pursuant to D.C.COLO.LCivR 7.1 &
### Hon. S. Cato Crews' Standing Order for Civil Cases § C (1)

Undersigned counsel certifies that they conferred with Defendant HIG's counsel regarding this motion on June 11, 2024. The parties also discussed this matter at the Scheduling Conference held with Magistrate Judge Starnella on June

12, 2024. Defense counsel for HIG opposes Plaintiffs' request for jurisdictional

discovery and maintains that HIG is not subject to personal jurisdiction in

Colorado.

### Certification Regarding Use of Artificial Intelligence Pursuant to Judge Crews' Standing Order for Civil Cases § C (2)

Undersigned counsel certifies that no portion of this Response was drafted by

AI.

## I.    INTRODUCTION

Defendant HIG has moved for dismissal for lack of personal jurisdiction, as

well as failure to state a claim for relief. Defendant HIG claims it lacks sufficient

contacts with the State of Colorado such that it does not satisfy the requirements of

Colorado's Long Arm Statute. C.R.S. § 13-1-124. Plaintiffs, through their Complaint

and this Motion, present a sufficient factual basis to establish a *prima facie* case for

establishment of specific jurisdiction over HIG which entitles Plaintiffs to conduct

limited jurisdictional discovery. Plaintiffs have sufficiently established that

Defendant HIG has purposefully availed itself of the privilege to conduct business

within Colorado and that Carl Martin's death arose out of Defendant HIG's contacts

with the state. HIG owns Defendant Wellpath, LLC. Specifically, Plaintiffs have

established that Wellpath, LLC (the jail healthcare company that operated in the

Adams County jail where the events of this lawsuit took place) is an agent of

Defendant HIG through its investment fund called the Advantage Fund. HIG enjoys

fruits of the significant profits and other business advantages Wellpath secures by

operating in many Colorado jails. Wellpath's cost-cutting and revenue-driving

2

policies, as advised, controlled, and implemented by HIG, led directly to the deliberately indifferent care of Mr. Martin that caused his death.

HIG seeks to avoid jurisdiction in Colorado by claiming that it is a legally separate entity from Wellpath that only provides consulting services and recommendations to Wellpath but exercises no direct ownership or control. HIG's untested affidavit by General Counsel and Chief Compliance Officer Richard Siegel attempts to hide HIG from liability through a corporate shell game but fails to refute the fact that the Advantage Fund owns and controls Wellpath and that HIG employees manage and control the Advantage Fund as agents of HIG. [ECF 20-1, ⁋ 7]. HIG has the authority and power to influence and control Wellpath and its practices and policies, and if it chooses to not exercise any such influence or management control, that does not mean it is immune from being held accountable. Indeed, a jail deliberate indifference case is frequently based on the defendants' choice to do nothing about a known deficiency in the system that foreseeably causes injury or death – that is usually the essence of "deliberate indifference." Since Wellpath tortfeasors in the State of Colorado were responsible for Mr. Martin's death, and those tortfeasors are agents of the Advantage Fund which is controlled by HIG employees, who chose to do nothing in the face of known risks to life, health and safety, Plaintiffs have established minimum contacts in the forum state such that personal jurisdiction over HIG is authorized.

Jurisdictional discovery is appropriate when pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of

these facts may be necessary. HIG has alleged that it has no control over the
Advantage Fund, though it plainly employs the Head and other Managing Directors
of the Advantage Fund, who in turn control and direct Wellpath. Thus, there are
several controverted facts bearing on the question of jurisdiction in this case.
Plaintiffs therefore seek to conduct limited jurisdictional discovery over a 90-day
period on the question of HIG's contacts with the forum state. Plaintiffs seek a stay
on briefing related to HIG's motion to dismiss while jurisdictional discovery is
conducted and have filed a contemporaneous response to the motion to dismiss
requesting the same. Plaintiffs request that both this motion and the request for a
stay of briefing be decided together.

## II.    STATEMENT OF RELEVANT FACTS

Plaintiffs bring this lawsuit to hold Defendants responsible for the death of
27-year-old Carl Martin, who died on April 5, 2022 from severe alcohol withdrawal
that he suffered over the course of his seven-day detention at the Adams County
Detention Facility in Brighton, Colorado. Mr. Martin's death was directly caused by
the deliberate indifference of Wellpath and Adams County staff, who failed to
properly examine and treat Mr. Martin or refer him to a higher-level medical
provider as his condition obviously and drastically deteriorated. Mr. Martin's death
was a foreseeable result of Wellpath's constitutionally deficient customs and
practices, which are attributable in part to HIG's refusal to ensure such practices
comport with constitutional mandates.

Mr. Martin is not the only person to have died due to the deliberate indifference of Wellpath medical staff – Plaintiffs' Complaint describes a shocking array of similar instances across the country of incarcerated individuals who died as a result of grossly inadequate Wellpath care. Plaintiffs allege that this pattern of constitutionally deficient care is no coincidence, but rather the product of a cost-cutting campaign by Defendant HIG, a shadowy profiteer who "has authorized and in fact encouraged Defendant Wellpath to conduct [its] activities in a manner that prioritizes containment of costs and jeopardizes the lives of individuals with serious medical conditions" for HIG's own material gain. [ECF 1, ¶ 36]. And the enhanced profits flow into HIG's pockets.

## III.    LEGAL STANDARD

### A. Personal Jurisdiction over Defendant HIG

In order to establish personal jurisdiction over a nonresident defendant, a plaintiff must show: (1) that the jurisdiction is authorized under the laws of the forum state, and (2) that the exercise of jurisdiction comports with the Fourteenth Amendment's Due Process Clause. *Dental Dynamics, LLC v. Jolly Dental Group, LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020) (citing *Walden v. Fiore*, 571 U.S. 277, 282 (2014)). Colorado's long-arm statute "confer[s] the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions." *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005) (citing *Keefe v. Kirschenbaum & Kirschenbaum, P.C.*, 40 P.3d 1267, 1270 (Colo. 2002)); *accord Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017).

5

Thus, personal jurisdiction in Colorado must simply comport with the requirements of federal due process. *Old Republic*, 877 F.3d at 903.

"Due process requires both that the defendant 'purposefully established minimum contacts within the forum State' and that the 'assertion of personal jurisdiction would comport with fair play and substantial justice.'" *Old Republic*, 877 F.3d at 903 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). Depending on the nature of the plaintiff's claims, a nonresident defendant's contacts with the forum state can result in either general or specific (case-linked) jurisdiction. *Id.* (citing *Daimler AG v. Bauman*, 571 U.S. 117 (2014)). Plaintiffs contend that the exercise of specific jurisdiction is appropriate in this case.

Specific jurisdiction is a less stringent standard than general jurisdiction and calls for a two-step inquiry: (a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 476-77. The minimum contacts test for specific jurisdiction requires (i) that the defendant "purposefully directed its activities at residents of the forum state," and (ii) that "the plaintiff's injuries must arise out of [the] defendant's forum-related activities." *Id.* at 475. Plaintiffs in Colorado may establish minimum contacts when a non-resident's "agent" commits a tortious act in Colorado. *See Goettman v. N. Fork Valley Rest.*, 176 P.3d 60, 66 (Colo. 2007). To demonstrate an agency relationship, plaintiff must plead facts showing the "manifestation of consent by one person to

6

another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Filho v. Rodriguez*, 36 P.3d 199, 200 (Colo. App. 2001) (quoting *City & Cty. of Denver v. Fey Concert Co.*, 960 P.2d 657, 660 (Colo. 1998)).

## B. Standard for Allowing Limited Jurisdictional Discovery

Where the Court's jurisdiction is contested, the plaintiff bears the burden of establishing personal jurisdiction over the defendant. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). In the preliminary stages of litigation, however, the plaintiff's burden is light. *Doe v. National Medical Services*, 974 F.2d 143, 145 (10th Cir. 1992). When personal jurisdiction is challenged under Rule 12(b)(2), absent an evidentiary hearing, the plaintiff need only make a *prima facie* showing of facts that, if true, support personal jurisdiction over the defendant. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004) (citing *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999)). The Court must also resolve all factual disputes in favor of the plaintiff in determining whether the plaintiff has made a *prima facie* showing. *Id.* at 1075.

"When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Am. Family Mut. Ins., Co. v. Robert Bosch, LLC*, Civil Action No. 23-cv-00455-DDD-NRN, 2023 U.S. Dist. LEXIS 218242, at *16 (D. Colo. Dec. 7, 2023) (citing *Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975)). "To obtain jurisdictional discovery, a plaintiff must 'present a sufficient factual predicate for the establishment of personal jurisdiction.'" *Gordon Howard Associates, Inc. v.*

*Lunareye, Inc.*, 2013 U.S. Dist. LEXIS 148230, at *4 (D. Colo. Oct. 15, 2013)

(quoting *St. Paul Travelers Cas. & Sur. Co. of America v. Guaranty Bank & Trust*

*Co.*, 2006 U.S. Dist. LEXIS 49009, at *4 (D. Colo. July 10, 2006) (unpublished)).

    The trial court has broad discretion in determining whether to allow

jurisdictional discovery, but a refusal to grant discovery constitutes an abuse of

discretion if the denial results in prejudice to a litigant. *Grynberg v. Ivanhoe*

*Energy, Inc.*, 490 Fed. Appx. 86, 102-03 (10th. Cir. 2012) (unpublished). "Prejudice

is present where 'pertinent facts bearing on the question of jurisdiction are

controverted or where a more satisfactory showing of the facts is necessary.'" *Id.*

(quoting *Wells Fargo & Co v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th

Cir. 1977)).[1]

## IV.   Argument

### A. Plaintiffs Present a Sufficient Factual Predicate to Establish a *Prima Facie* Case for the Establishment of Specific Jurisdiction

    Through their Complaint (which Plaintiffs incorporate herein by reference),

this Motion and its attachments, and Defendant HIG's own affidavit, Plaintiffs have

established that Wellpath acts as an agent of Defendant HIG in the State of

---

[1] Courts routinely grant motions for jurisdictional discovery under these circumstances – District of Colorado Magistrate Judges Wang and Neureiter have recently granted other plaintiffs' requests for jurisdictional discovery where a more satisfactory showing of the facts was necessary. *See Ubel v. Progressive Direct Ins. Co.*, Civil Action No. 1:20-cv-00204-RM-NYW, 2020 U.S. Dist. LEXIS 181773, at *15 (D. Colo. June 9, 2020); *Am. Family Mut. Ins., Co. v. Robert Bosch, LLC*, Civil Action No. 23-cv-00455-DDD-NRN, 2023 U.S. Dist. LEXIS 218242, at *21 (D. Colo. Dec. 7, 2023).

Colorado. Specifically, Defendant HIG has attempted to establish its Advantage Fund as a fictional corporate buffer to HIG liability but has not refuted the Advantage Fund's ownership and control over Wellpath. Nor has it refuted that HIG has agency control over the Advantage Fund through its own employees. Since HIG directly employs individuals who manage and control the Advantage Fund, which in turn owns and controls Wellpath (including its activities in Colorado), Wellpath is an agent of HIG.

HIG asserts in its Motion to Dismiss that HIG and Wellpath are separate legal entities, and that HIG is merely "the investment adviser to the Investment Fund that is the equity sponsor of Wellpath." [ECF 20, p. 3]. HIG also states that the Investment Funds "invest in various Portfolio Companies" and are "set up as limited partnerships, and, like the Portfolio Companies, they are separate legal entities from HIG." [ECF 20, pp. 2-3]. HIG does not attempt to dispute the Advantage Fund's ownership and control of Wellpath, however. Furthermore, HIG does not explain how it can directly employ the "Head" and other "Managing Directors" of the Advantage Fund without manifesting consent for those employees to act on behalf of HIG with respect to Wellpath, an Advantage Fund Portfolio Company. *See Filho*, 36 P.3d at 200. Michael Kuritzky and Justin Reyna are both employed by HIG as Managing Directors and both oversee the Advantage Fund; Rob Wolfson is employed by HIG as Executive Managing Director and is the Head of the Advantage Fund. [ECF 1, ¶ 33]. These HIG employees are agents of HIG with

authority to manage and control the Advantage Fund, which in turn owns and controls Wellpath.

HIG further states that "the Portfolio Companies' day-to-day management and operational control remains with each company's management team." [ECF 20, p. 3]. This choice of phrasing, which implies that the Advantage Fund supplies a "management team" to each of its Portfolio Companies, suggests that the Advantage Fund does control the "day-to-day management and operational control" of Wellpath. Though HIG also states that it "does not hold any *ownership* interest in the Investment Funds," (italics added), it does not state facts sufficient to refute agency *control* over the Advantage Fund. [ECF 20-1, ¶ 7]. A disputed question of fact remains as to HIG's agency control over the Advantage Fund, as well as the Advantage Fund's control and ownership of Wellpath.

Plaintiffs are able to demonstrate that a "more satisfactory showing of the facts is necessary" such that jurisdictional discovery is warranted based on these gaps in Defendant HIG's affidavit alone. *Grynberg*, 490 Fed. Appx. at 103. This is especially true considering the fact that the question of personal jurisdiction depends heavily on internal and private corporate matters not readily available to the public, making Plaintiffs' ability to obtain contradictory affidavits at this stage and without any discovery or even disclosures nearly impossible. However, Plaintiffs' attorneys have scoured public documents in search of additional evidence supporting its *prima facie* case of personal jurisdiction. An HIG promotional document disclosed by the New Hampshire Retirement System Investment

Committee as part of its process to select an investment fund paints a picture of a very different HIG than the one described in the Defendant's affidavit – it depicts an HIG that represents to huge potential institutional investors that HIG is focused on driving profits through operational efficiencies and direct hands-on control of its portfolio companies, creating exactly the type of agency relationship alleged by Plaintiffs. *See* **Exhibit A**.

HIG advertises to the New Hampshire Retirement System that when it acquires a company (through its Investment Funds), the "**Fund will typically have the majority of the seats on the Board of Directors of each acquired company. H.I.G. believes that this control is essential given its proactive investment philosophy. It gives H.I.G. the ability to make any necessary changes to its portfolio companies**." **Exhibit A, HIG Presentation to New Hampshire Retirement System (excerpt), p. 20**. HIG's "operating philosophy is to form a close partnership with the management team of a portfolio company and **jointly develop the portfolio company's strategic direction**, KPIs, priorities, and associated action plans**…[HIG] is actively involved in the business decisions, which it believes are vital to generating significant incremental value…H.I.G. requires portfolio companies to provide them with weekly and monthly operating and financial data customized to monitor the portfolio company's performance in real time**." *Id.* (Bold added).

Thus, rather than merely a distant and disinterested provider of services that only suggests "recommendations" to its portfolio companies, HIG brags to investors

that it is intensively operations-focused, with ongoing *active management* of

portfolio companies' business decisions and financial success. When not faced with

litigation based on HIG's influence over its portfolio companies, HIG seeks to

reassure its investors that it is actively involved in Wellpath's business decisions in

order to cut costs, drive profit, and ultimately improve returns on investment.

Traditional investment strategies for private equity firms support HIG's out-

of-court representations of its control over portfolio companies as the true corporate

relationship. *See* "Private Equity Funds," U.S. Securities and Exchange

Commission, accessed June 12, 2024 ("A typical investment strategy undertaken by

private equity funds is to take a controlling interest in an operating company or

business – the *portfolio company* – and engage actively in the management and

direction of the company or business in order to increase its value.").[2]

Plaintiffs' allegations in this case are directly related to this influence over

Wellpath by HIG. Plaintiffs allege that HIG "has authorized and in fact encouraged

Defendant Wellpath to conduct [its] activities in a manner that prioritizes

containment of costs and jeopardizes the lives of individuals with serious medical

conditions" for HIG's own material gain. [ECF 1, ¶ 36]. Plaintiffs have shown a

*prima facie* case that HIG "purposefully directed its activities at residents" of

Colorado through its directives to cut costs at the expense of those in Wellpath's

care (including at Adams County Detention Facility). This Wellpath-wide directive

---

[2] Available at https://www.investor.gov/introduction-investing/investing-basics/investment-products/private-investment-funds/private-equity.

is evident not just in Mr. Martin's case, but in the shocking number of similar cases across the country resulting from inadequate care due to cost-saving measures by Wellpath. Plaintiffs have also established that Mr. Martin's injuries arose out of that very cost-cutting that resulted in Wellpath's failure to take him to a higher-level provider or the hospital, which would cost more money. *See Burger King*, 471 U.S. at 475.

It is not only Plaintiffs who believe HIG's control over Wellpath is causally related to tragic outcomes in Wellpath-related jail facilities. On December 18, 2023 a group of twelve prominent United States Senators, including Senators Warren, Durbin, Ossoff, Markey, Warnock, Butler, Welch, Merkley, Blumenthal, Sanders, Hirona, and Booker, sent a letter of inquiry to HIG's two co-CEO's and Wellpath's CEO outlining serious concerns about the medical care provided by Wellpath and seeking related information and documentation. The letter is robustly documented with the factual bases for these Senators' concerns, and notes at one point that "[t]he more recent trend of private equity firms such as H.I.G. Capital purchasing prison healthcare providers — along with food, commissary, and telecommunications providers — has supercharged the profit incentive to compromise service quality." *See* **Exhibit B**, Letter of Inquiry, attached. A recent conversation between undersigned counsel and counsel for HIG revealed that HIG had not, and did not intend to, respond to the inquiry from the group of United States Senators. Counsel for Plaintiffs' request to be provided with the very same information sought by these 12 US Senators was likewise flatly rejected.

Plaintiffs' Complaint and the foregoing information, evidence, and written materials present a sufficient factual predicate to establish a *prima facie* case for specific jurisdiction over Defendant HIG. In addition, Plaintiffs have presented controverting evidence to HIG's affidavit as established in HIG's promotional materials, as well as the conspicuous gaps in HIG's affidavit regarding its agency relationship with the Advantage Fund which owns and controls Wellpath. Plaintiffs' burden at this early stage of litigation is light, and the Plaintiffs are entitled to resolution of all factual disputes in its favor. *National Medical Services*, 974 F.2d at 145; *Benton*, 375 F.3d at 1074.

Therefore, Plaintiffs respectfully ask this Court to summarily deny Defendant HIG's motion to dismiss for lack of personal jurisdiction. In the alternative, Plaintiffs contend they are entitled to jurisdictional discovery to resolve numerous controverted facts bearing on the question of jurisdiction, as a more satisfactory showing is currently required to establish jurisdiction.

## B. Subject of Limited Jurisdictional Discovery

Plaintiffs seek limited jurisdictional discovery to resolve the controverted facts relevant to personal jurisdiction over Defendant HIG. Specifically, Plaintiffs seek:

- A Rule 30(b)(6) deposition of an appropriate HIG representative lasting up to five (5) hours regarding HIG's corporate relationship with the Advantage Fund, HIG's employees' management and control of Wellpath through the Advantage Fund or otherwise, Wellpath's "business decisions" that HIG has

14

directed, how HIG monitors, influences, and/or controls Wellpath's weekly

and monthly operating and financial data in order to monitor its

performance, how HIG's board members exercise the "control" that "is

essential given [HIG's] proactive investment philosophy" enabling HIG to

"make any necessary changes to its portfolio companies," and what changes

HIG has "recommended" to drive operational efficiencies at Wellpath.

- Up to five (5) Interrogatories regarding the 30(b)(6) topics listed above.

- Production by HIG of contracts and other documents evidencing the corporate

  relationship between HIG, the Advantage Fund, and Wellpath.

- Communications between HIG employees, Advantage Fund employees, and

  Wellpath employees relevant to the topics suggested for the 30(b)(6)

  deposition.

- Up to five (5) Requests for Production of Documents regarding the issues

  addressed herein.

## V.    CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests this Court

deny Defendant HIG's Motion to Dismiss for Lack of Personal Jurisdiction or, in the

alternative, permit Plaintiff to conduct limited jurisdictional discovery as set forth

herein.

DATED this 18th day of June 2024.

KILLMER LANE, LLP

*/s/ Darold W. Killmer*
Darold W. Killmer

15

Liana Gerstle Orshan
Madison Lips
1543 Champa St., Ste. 400
Denver, CO 80202
Phone: (303) 571-1000
Facsimile: (303) 571-1001
dkillmer@killmerlane.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2024, I electronically served, via email, the foregoing to:

Kerri Booth
Adams County Attorney's Office
4430 South Adams County Parkway
Suite C5000B
Brighton, CO 80601
O: (720) 523-6116
D: (720) 523-6881
kbooth@adcogov.org

*Counsel for Defendants Adams County, Sheriff Claps, Adams Co. Board of County Commissioners, Crystal Law, Kayla Hampel, Alan Barry, Scott Fanselow, Andrew Vassalo, Lee Patton, Brandon Skalak, and Yvon Benoit*

Evelina Gentry
Akerman LLP
633 West Fifth Street, Suite 6400
Los Angeles, CA   90071
(310) 954-7654
evelina.gentry@akerman.com

Jason Oletsky
Akerman LLP
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, FL   33301
(954) 759-8909
jason.oletsky@akerman.com

Joyce Williams
Akerman LLP

1900 Sixteenth Street, Suite 950
Denver, CO   80202
(303) 260-7712
joyce.c.williams@akerman.com

*Counsel for H.I.G. Capital, LLC*

Emma M. Feeney
Hall Booth Smith, P.C.
5445 DTC Parkway, Suite 900
Greenwood Village, CO 80111
O: 303.773.3500
D: 303.874.3402
efeeney@hallboothsmith.com

Brenda McClearn
Amy Williams
Hall Booth Smith, P.C.
5445 DTC Parkway, Suite 900
Greenwood Village, CO 80111
T: 303.773.3500
D: 303.874.3421
F: 720.806.2292
bmcclearn@hallboothsmith.com
amywilliams@hallboothsmith.com

*Counsel for Defendant Wellpath, LLC, Amanda Beckwith, Ashley Snyder, and
Maryann Martha Magley-Herman*

Christopher Jones
Gordon Rees Scully Mansukhani, LLP
555 Seventeenth St., Suite 3400
Denver, CO   80202
(303) 200-6893
crjones@grsm.com

*Attorney for Jamie Lalicker, Scarlett McCurry, Karie Mitchell, Sonya Barrera,
Andrea Pasillas, Janice Marshall, Sara Post, Aimee Olson, and Jessica Haakeson*

KILLMER LANE, LLP

*s/ Jesse Askeland*
_____
Jesse Askeland

17