IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-00855-SKC-KAS

ESTATE OF CARL MARTIN, by and through its personal representatives Belynn Guerrero and Terry Martin;
BELYNN GUERRERO, individually; and TERRY MARTIN, individually,

 Plaintiffs,

v.

ADAMS COUNTY, COLORADO;
ADAMS COUNTY SHERIFF GENE CLAPS, in his official capacity;
ADAMS COUNTY BOARD OF COUNTY COMMISSIONERS;
WELLPATH, LLC;
H.I.G. CAPITAL, LLC;
LPN JAMIE LALICKER, in her individual capacity;
LPN SCARLETT MCCURRY, in her individual capacity;
RN KARIE MITCHELL, in her individual capacity; RN SONYA BARRERA, in her individual capacity
;
RN AMANDA BECKWITH, in her individual capacity; LPN
 ANDREA PASILLAS, in her individual capacity;
MHP MARYANN MARTHA MAGLEY-HERMAN, in her individual capacity;
LPN JANICE MARSHALL, in her individual capacity; LPN SARA POST, in her individual capacity; RN AIMEE OLSON, in her individual capacity; RN ASHLEY SNYDER, in her individual capacity; LPN JESSICA HAAKESON, in her individual capacity; DEPUTY CRYSTAL LAW, in her individual capacity; DEPUTY KAYLA HAMPEL, in her individual capacity; DEPUTY ALAN BARRY, in his individual capacity; DEPUTY SCOTT FANSELOW, in his individual capacity; DEPUTY ANDREW VASSALLO, in his individual capacity; DEPUTY LEE PATTON, in his individual capacity; DEPUTY BRANDON SKALAK, in his individual capacity; and DEPUTY YVON BENOIT, in her individual capacity;

 Defendants.

**WELLPATH, LLC'S PARTIAL MOTION TO QUASH OCTOBER 21, 2025, SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS**

Wellpath, LLC ("Wellpath"), by and through its undersigned counsel, Gordon Rees Scully Mansukhani, LLP, hereby moves to quash, in part, Plaintiffs' October 21, 2025, Subpoena to Produce Documents, Information, or Objects (the "Subpoena") and, as support hereto, states the following:

## Procedural Background

1. Plaintiffs filed the above-captioned lawsuit on March 28, 2024. At that time, Plaintiffs named Wellpath, LLC as a Defendant in this action. [Doc. 1]

2. On November 11, 2024, Wellpath Holdings, Inc., and its affiliates, including Wellpath, commenced a bankruptcy case in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") by filing a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Wellpath Bankruptcy"). That matter was assigned Case No. 24-90533. Wellpath provided the Court with notice of the Wellpath Bankruptcy filing and automatic stay of proceedings on November 13, 2024. [Doc. 109]

3. On May 1, 2025, the Bankruptcy Court entered its Findings of Fact, Conclusions of Law, and Order (I) Confirming the First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of its Debtor Affiliates and (II) Approving the Disclosure Statement on a Final Basis ("Plan Confirmation Order"). [Doc. 139-2]

4. Pursuant to Article IX.A. of the Plan Confirmation Order:

> . . . Pursuant to and to the maximum extent provided by, section 1141(d) of the Bankruptcy Code and except as other specifically provided in the Plan, or in any contract, instrument or other agreement or document created pursuant to the Plan, the

2

> distributions, rights, and treatment that are provided in the plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties . . . including demand, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services that employees of the Debtors have performed prior to the Effective Date . . . .

[Doc. 139-2, p. 129]

5.  Further, pursuant to Article IX.F. of the Plan Confirmation Order:

> [e]xcept as otherwise expressly provided in the plan, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims or interested that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the effective date, from taking any of the following actions against, as applicable, the Debtors, the Post-Restructuring Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any many any action or other proceeding of any kind on account of or in connection with or with respect to any such claim or interest; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; . . . and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plain; *provided*, that, for the avoidance of doubt, this Article IX.F shall not apply to parties that timely opt out of the Third-Party Release to preserve their claims against the Released Parties.

[Doc. 139-2, p. 134]

6.  On May 7, 2025, the Parties filed with the Court several status reports advising the Court that the automatic stay as to all non-debtor Defendants (excluding Wellpath,) was to be lifted on May 8, 2025. [Docs. 127, 128, 129]

3

7. On June 27, 2025, undersigned counsel filed with the Court a Notice of Discharge and Injunction as to Defendant Wellpath. [Doc. 160]. In that Notice, counsel notified the Court of the Plan Confirmation Order language discussed above, as well as the fact that a liquidating trust had assumed all the Debtors' liability for general unsecured claims, including personal injury and wrongful death claims that arose before the Petition Date. (*Id.*). Pursuant to the Plan Confirmation Order, parties may not seek payment for such liabilities from the Debtors, the Post-Restructuring Debtors, or the property of either entity beyond distributions by the liquidating trust. (*Id.*)

8. On October 24, 2025, Plaintiff served Wellpath with a Subpoena pursuant to Rule 45, which is attached hereto as **Exhibit A.**

9. On November 7, 2025, Wellpath objected and responded, in part, to the Subpoena. Contemporaneously with those objections and responses, Wellpath submits the present Motion to Quash.

## Argument and Authority

### A. Plaintiffs cannot proceed with party discovery against Wellpath and must proceed under Rule 45.

As of the date of this Motion, two Magistrate Judges in the United States District Court for the District of Colorado have determined that Wellpath, as an entity discharged in bankruptcy, is only subject to discovery pursuant to Fed.R.Civ.P. 45 – not party discovery pursuant to Rule 33, 34, and 36. Recently, Magistrate Judge Varholak ruled that the plaintiff "shall go through the Rule 45 process to serve Wellpath" with discovery requests. *The Estate of Abby Angelo and Kristie Angelo v.*

4

*The Board of County Commissioners of Jefferson County, Colorado, et al.*, No. 1:23-cv-01607-CNS-STV (D. Colo. 2025) (Doc. 204).

Further, this Court ruled similarly that Wellpath was no longer subject to discovery as though it remained a normal party to this lawsuit. *Romero, et al. v. Wellpath, LLC et al.*, No. 1:24-cv-00997-SKC-KAS. Rather, as a nominal defendant, Wellpath was only subject to discovery pursuant to the dictates of Rule 45. (*Id.*) Therefore, as this Court has already recognized on two separate occasions, Plaintiffs must utilize the Rule 45 process if they wish to obtain discovery from Wellpath pertaining to the claims against former employees of Wellpath that were not discharged in bankruptcy and given its continuing role solely as a fact witness. Plaintiffs are precluded from conducting continued discovery relevant only to the discharged § 1983 claims.

Additionally, the Tenth Circuit addressed a similar issue in *In re Paul*, 534 F.3d 1303 (10th Cir. 2008). There, the plaintiff filed a lawsuit in Colorado state court against Peak Sports and Rudy and Carol Paul ("the Pauls"). 534 F.3d at 1305. The Pauls subsequently filed for Chapter 7 bankruptcy, which resulted in discharge of the plaintiff's pre-petition claims against them. *Id.* The case proceeded against Peak Sports as the defendant and against the Pauls, who had moved to Wisconsin, as nominal defendants. *Id.* The plaintiff served notices of deposition on them but acknowledged that she could not obtain discovery on the pre-petition claims. *Id.* The Pauls failed to appear for their depositions, and the plaintiff sought sanctions. *Id.* The court imposed sanctions on the Pauls because of their failure to appear and sanctioned Mr. Paul for failing to respond to discovery requests. *Id.* at 1305-06. The Pauls moved for reconsideration, arguing that their personal immunity from liability on the pre-petition claims (resulting from their discharge in bankruptcy) nullified their formal status as parties for purposes of discovery obligations pursuant to the discharge injunction. *Id.* at 1306. Ultimately, the state court agreed with the Pauls'

5

position and held that "discovery could be obtained from them only in a manner appropriate for non-resident non-parties." *Id.*

The Pauls also brought a proceeding in the bankruptcy court, alleging that the plaintiff had violated the discharge injunction. *Id.* The bankruptcy court agreed and found the plaintiff's discovery efforts violated the injunction. *Id.* The plaintiff appealed to the Tenth Circuit. *Id.*

On appeal, the Tenth Circuit reviewed whether the plaintiff violated Section 524(a)(2) of the Bankruptcy Code in seeking discovery from the nominal defendants on the pre-petition claims against Peak Sports. *Id.* at 1312. The Tenth Circuit considered whether a debtor who remains in an action as a nominal defendant may be required to comply with discovery. *Id.* at 1307. It analyzed Section 524(a)(2), which permits debtors to be named nominally as defendants to collect from a third party (e.g., an insurer), and reasoned that a debtor, "whether she has received a discharge or not, is not relieved of the responsibility she has, as do all citizens, to testify at trial and/or participate in discovery as a **witness**." *Id.* (emphasis added) (internal quotations and citation omitted). The Tenth Circuit recognized that the state court appropriately limited the plaintiff to non-party discovery procedures to the extent she sought discovery from the nominal defendants on pre-petition claims against Peak Sports. *Id.* at 1310.

As in *In re Paul*, Wellpath's status as a real party was nullified by the Bankruptcy Court's discharge injunction. *See id.* at 1306. Plaintiffs cannot discover any information about their pre-petition claims against Wellpath, as those claims were discharged in bankruptcy. To the extent Plaintiffs seek to discover information from Wellpath about the remaining claims against the Individual Defendants, Plaintiffs must utilize Rule 45, which is a "manner appropriate for non-resident non-parties." *Id.* Due to the discharge and injunction, Wellpath remains simply a fact witness in this case. *Id.*

6

### B.     Rule 45 Standards

A party issuing a subpoena and seeking an order compelling production must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings; relevance in this context is analyzed under the standard outlined by the rule governing the scope and limits of discovery. Fed. R. Civ. P. 26(b)(1) and 45(d)(2)(B)(i). The court has broad discretion in determining relevance for discovery purposes, and wide latitude to determine the scope of discovery. Fed. R. Civ. P. 26(b)(1). To determine whether a subpoena imposes an undue burden, courts weigh the burden to the subpoenaed party against the value of the information to the serving party by considering factors such as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed. Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv).

### C. The Court Should Quash Plaintiff's' Subpoena to Wellpath because it is Overbroad and would subject Wellpath to undue burden or expense.

Pursuant to Rule 45, "[a] person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials . . . ." Fed. R. Civ. P. 45(d)(2)(B). A copy of Wellpath's objections to the subpoena is attached as **Exhibit B**. Further, "[o]n timely motion, the court for the district where compliance is required *must* quash or

7

modify a subpoena that: . . . (iii) requires disclosure of privileged or other protected material; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

Rule 45(d) is titled "Protecting a Person Subject to a Subpoena". Subsection (d)(1) provides that the "party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing *undue burden or expense on a person subject to the subpoena*". (Emphasis added). Both the title of the Rule and the content is evidence that the primary purpose of Rule 45(d) is to protect the person subject to the subpoena. *CineTel Films, Inc. v. Does 1–1,052*, 853 F.Supp.2d 545, 556 (D.Md.2012) ("the undue burden contemplated by Rule 45 is one placed on the direct recipient of the subpoena"); *In re Rhodes Companies, LLC,* 475 B.R. 733 739–40 (D.Nev.2012).

Courts have quashed subpoenas issued to non-parties where they are facially overbroad, would require production of a massive number of irrelevant documents, and are not well tailored to the facts of the underlying case. *See Gilmore v. Jones*, 339 F.R.D. 111, 125-126 (W.D. VA, July 1, 2021). For instance, in *Stecklein & Rapp Chartered v. Experian Information Solutions, Inc.*, the Eighth Circuit Court of Appeals considered "How much is too much in discovery?" when it addressed whether subpoenas issued by the defendant in that case were insufficiently tailored under Rule 45. 113 F.4th 858, 860-862 (8th Cir. 2024). In granting the subpoena target's motion to quash (and awarding it attorney fees in the process), the court determined that compliance with the subpoenas would have caused significant

8

delay and expense and invaded the privacy interests of litigants and third parties. *Id.* (internal quotations and citations omitted).

Like *Stecklein,* numerous of Plaintiffs' subpoena requests are facially overbroad and production of the same would subject Wellpath to undue burden and expense. Mr. Martin was incarcerated at the Adams County Detention Facility for a total of **seven days from March 30, 2022, to April 5, 2022**. Despite the short duration of Mr. Martin's underlying incarceration, Plaintiffs seek several years of Wellpath records related to its operations both within and outside the State of Colorado. By way of example, Plaintiffs request the following in Request No. 3:

> 3. All documents and tangible items related to any disciplinary, regulatory, or adverse personnel actions, whether formal or informal, taken against any of the Individual Medical Defendants at any time between January 1, 2012, and the present, including notes, reports, transcripts, correspondence, electronic recordings, and any other documents prepared prior to, during or following disciplinary, regulatory, or personnel investigations or proceedings.

**Ex. A,** p. 5. As written by Plaintiffs, it is hard to imagine any document that would not come within the scope of the request for a period of more than 13 years. Given the breadth of the request, both in terms of the scope of the documents requested, as well as the time frame for the same, the request is facially overbroad when compared to the relatively short duration of Mr. Martin's incarceration in Adams County.

Likewise, Request No. 4 commands Wellpath to produce all its "policies procedures, protocols with respect to providing medical services at ACDF, from the beginning of Wellpath's 2019 contract to provide services at ACDF through the

9

present." **Ex. A**, p. 5. As with the previous production request, Plaintiffs' request is not tailored to the facts of the present case. It is not sufficiently limited in temporal scope and is not tailored to the allegations in the Complaint regarding provision of alcohol withdrawal treatment and related documentation. The same issues permeate Plaintiffs' Requests No. 5, 9, 12, and 13. **Ex. A**, p. 5, 7-8.

With respect to Requests No. 6, Plaintiffs have again failed to narrowly tailor the request as required by Fed. R. Civ. P. 45(d)(1). Instead, Plaintiffs command Wellpath to produce "all documents related to any claims or complaints (whether formal or informal) made against You or any of your current or former employees, agents, or independent contractors of mistreatment or failure to provide medical care at ACDF or related to any investigations or reviews into the provision of medical care to specific detainees at ACDF . . .." **Ex. A**, p. 6. Request No. 6 contains no temporal limitation which would serve to ground the request in Plaintiffs' allegations arising from Mr. Martin's brief incarceration at ACDF. Further, it does not contain any limitation with respect to subject matter of the requested "claims or complaints" to tie the request to Plaintiffs' allegations. In fact, if the language of Plaintiffs' request is accepted at face value, it seemingly encompasses every prisoner complaint to Wellpath, of any kind whatsoever, at any time, based upon any event without limit. Plaintiff took no steps to avoid imposing undue burden or expense on a person subject to the subpoena.

Request No. 10 goes a step farther. Not only does Plaintiffs' request encompasses a nine-year time frame, but Plaintiffs removed any geographic limits

10

whatsoever related to the commanded production. Instead, Plaintiffs again seek "all documents" related to "every detainee/inmate death *caused by or related to substance abuse withdrawal* from January 1, 2016, to the present *at any facility where Defendant contracts to provide medical services or involving an inmate that died at the hospital immediately after (within one month of)* detention at such a facility." **Ex. A**, p. 7. First, it is questionable whether Wellpath could even respond to this request with unlimited time and resources. It is unclear how Wellpath is to determine whether an inmate's death was *caused by or related to* substance abuse withdrawal in all instances. Furthermore, it is unclear at best how Wellpath is determine when, why, and how inmates died within a month of their release from custody and attendant release from Wellpath's care. In addition, Plaintiff's request fails to reasonably limit itself in time or geography.

Request No. 13 takes the overbreadth of Request No. 10 a step farther. While Request No. 10 arguably limited itself to causes of death related to Mr. Martin's alleged cause of death, Request No. 13 seeks all records for *any inmate death* at ACDF *or within one month of release from ACDF* regardless of the cause of death. Furthermore, Request No. 13 specifically seeks production of the medical records pertaining to such inmates, which foreseeably opens Wellpath up to liability for violation of patient confidentiality.

Finally, Request No. 15 seeks nine years of records related to any employee's accusation of falsifying or failing to properly create or maintain records *at any detention facility with which Wellpath contracts* to provide medical services. **Ex. A**,

11

p. 9. As with Request No. 10, Plaintiffs' request is not sufficiently limited with respect to time or geography. Additionally, because Plaintiffs seek records related not only to discipline for record-related violations, but also any accusations of the same, it is impossible for Wellpath to accurately respond to the same.

As discussed above, Plaintiffs have a duty under Rule 45 to take reasonable steps to avoid imposing *undue burden or expense on a person subject to the subpoena*. The nature of Plaintiffs' production requests evidence a complete dereliction of that duty. Requiring Wellpath to respond to the Subpoena, as written, would impose significant burden and expense on Wellpath that outweighs the value of the information sought by Plaintiffs given the facts of the underlying case and Wellpath's limited role as a witness. Accordingly, Wellpath respectfully requests that the Court quash the Subpoena as set forth above.

### D. Documents requested by Plaintiffs are subject to federally recognized privileges.

Requests No. 1, 10, and 13 command Wellpath to produce documents concerning its internal investigations related to death of Mr. Martin and others. **Ex. A**, p. 4, 7, 8. Wellpath objects to these Requests to the extent they seek documents protected under the Patient Safety and Quality Improvement Act of 2005 ("PSQIA"). Wellpath, as a health care provider, participates with a federally certified Patient Safety Organization ("PSO") as part of its patient safety activities, with the goal of improving patient outcomes by allowing healthcare providers to be candid without fear of retribution. Wellpath has maintained a relationship with the Center for Patient Safety since May 26, 2016. The Center for Patient Safety ("Center") was listed

12

by the Agency for Healthcare Research and Quality (AHRQ) as a federally certified PSO on November 5, 2008. The Center has maintained its certification since 2008. Wellpath's PSO participation is governed by the PSQIA and its attendant regulations. In collaboration with the Center, Wellpath conducts patient safety activities as part of its patient safety and quality improvement initiatives. Specifically, one of the main activities includes the collection, maintenance, and analysis of confidential and privileged Patient Safety Work Product ("PSWP"). Wellpath risks incurring significant penalties for improperly disclosing PSWP. 42 CFR § 102.3. Moreover, PSWP is privileged and shall not be "subject to a federal, state, or local civil, criminal, or administrative proceeding against a provider." 42 U.S.C. § 299b-22(a)(1). The PSQIA has strong preemptive power, and PSWP may not be disclosed. *Id*. There are very limited disclosure permissions outlined in the PSQIA, but those do not apply to the facts and circumstances here.

Moreover, these Requests seek the private medical and/or mental health information of third parties who are not part of the present litigation. Accordingly, this Request seeks documents in violation of HIPAA.

### E. Documents sought by Plaintiff violate this Court's stay of discovery involving Defendant HIG Capital, LLC.

Plaintiffs' Requests Nos. 1 and 11 improperly seek documents relating to H.I.G. Capital, LLC ("H.I.G."), in direct violation of this Court's order staying this case against H.I.G, including all pleading and discovery obligations, pending resolution of H.I.G.'s Motion to Enforce Confirmation and Release Orders (the "Enforcement Motion") (Doc. 171). Further, even apart from the stay, these requests seek

13

information that is irrelevant, legally immaterial, and would impose an undue burden contrary to Rule 45 and Rule 26(b)(1).

Specifically, Request No. 1 demands "[a]ll documents related to any internal or external investigation that was conducted … related to the detention and/or death of Carl Martin," expressly including "documents related to investigations conducted by … H.I.G. (if in the possession of Wellpath)," and encompassing "any reports, summaries, emails, recordings, statements, transcripts, interviews, notes, findings, conclusions, disciplinary actions, and other documents gathered or created in any such investigation."

Request No. 11 goes even further, seeking "[a]ll records relating to any communications, written or oral, between Wellpath or Wellpath employees, agents, or representatives and [H.I.G.] … regarding Adams County contracting with Wellpath to provide medical services at ACDF, including but not limited to entering into the initial contract and the renewal of the contract, analysis of the services provided by Wellpath, complaints or concerns of deficient provision of medical care, and continuation of the contract."

In its July 14, 2025, Order issued in connection with the Rule 16(b) Scheduling Conference, this Court granted H.I.G.'s Motion to Stay to Enforce the Bankruptcy Court Settlement in Wellpath Holdings' Bankruptcy Proceeding (Doc. 171). That Order stayed this action—including all discovery—against H.I.G. pending resolution of the Enforcement Motion in the Bankruptcy Court. Requests Nos. 1 and 11 constitute a transparent attempt by Plaintiffs to circumvent this stay by seeking from

14

Wellpath documents they are prohibited from obtaining directly from H.I.G. This tactic flagrantly disregards this Court's explicit stay Order. Compliance with these subpoena demands would violate the Court's Order. Accordingly, Wellpath respectfully requests that the Court quash any portion of the Subpoena compelling production of documents subject to the stay.

Further, by demanding that Wellpath produce "documents related to investigations conducted by H.I.G." or "communications … between Wellpath and H.I.G.," Plaintiffs blatantly disregard the exclusive jurisdiction of the Bankruptcy Court over the Enforcement Motion. Notably, following H.I.G.'s filing of the Enforcement Motion, Plaintiffs served similar discovery requests directly on H.I.G., which the Bankruptcy Court abated pending the ruling on the Motion to Enforce. Now, Plaintiffs seek a second bite at the apple by attempting to extract essentially the same documents from Wellpath. Allowing this would enable Plaintiffs to continue litigating against H.I.G.—through subpoenas to a third party—while the Bankruptcy Court is still evaluating whether the claims against H.I.G. may proceed. This approach not only wastes judicial and party resources but also undermines the finality, authority, and effectiveness of both this Court's and the Bankruptcy Court's orders.

Moreover, Requests Nos. 1 and 11 are facially overbroad and irrelevant. The core claims in this case focus exclusively on the adequacy of medical care provided to Mr. Martin at the Adams County Detention Facility during a defined seven-day period. They bear no relation to H.I.G.'s ownership structure, corporate oversight, or

15

contractual relationships, which, notably, can only support indirect, derivative claims. Such claims have been conclusively and finally released through the Release Orders, as explained in H.I.G.'s Enforcement Motion, and therefore cannot be asserted against H.I.G. Additionally, discovery seeking "communications between Wellpath and H.I.G." or "investigations conducted by H.I.G." lacks any relevance to the claims at issue and constitutes the type of speculative, impermissible "fishing expedition" disfavored by the courts. Further, requiring Wellpath—a non-party witness —to search potentially voluminous inter-corporate communications spanning multiple years would impose an undue burden and expense without producing relevant, material information.

Finally, compelling production of H.I.G.-related documents would defeat the purpose of the Bankruptcy Court-approved Release Orders, which were negotiated to relieve H.I.G. from pre-petition litigation burdens arising from Wellpath's conduct, as detailed in H.I.G.'s Enforcement Motion.

## Conclusion

WHEREFORE, for the reasons set forth above, Wellpath, LLC respectfully requests that the Court quash, in part, Plaintiffs' October 21, 2025, Subpoena and for such other and further relief as the Court deems proper.

Respectfully submitted this 6th day of November 2025.

                **GORDON REES SCULLY MANSUKHANI, LLP**

                */s/ Christopher R. Jones*
                Christopher R. Jones, #41488
                555 Seventeenth Street, Ste. 3400
                Denver, Colorado 80202
                (303) 534-5160
                crjones@grsm.com

17

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of November 2025, I filed the foregoing electronically with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Karla Freeman*_____